IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Roger D Blackwell, | : | Criminal No. 2:04-cr-00134 |
| | | (Civil Case No. 2:08-cv-00168) |
| Petitioner | : | |
| v. | : | Judge Graham |
| United States of America, | : | Magistrate Judge Abel |
| Respondent | : | |

## Order Adopting Report and Recommendation

Petitioner Roger D. Blackwell, a federal prisoner, challenges his criminal convictions for conspiracy to commit insider trading in violation of 18 U.S.C. § 371 (Counts 1 and 23); insider trading in violation of 5 U.S.C. §§ 78j and 78ff (Counts 2-15); false statements in violation of 18 U.S.C. § 1001 (Counts 46 and 48); and obstruction of an agency proceeding in violation of 18 U.S.C. § 1505 (Count 47) in a motion to vacate, set aside, or correct sentence under 28 U.S.C. §2255. This matter is before the Court on petitioner Blackwell's October 9, 2009, objections (doc. 338) to Magistrate Judge Mark R. Abel's September 22, 2009, Report and Recommendation (doc. 337) that the motion to vacate be denied.

The facts supporting the jury's verdict are set out in some detail in the decision of the United States Court of Appeals for the Sixth Circuit affirming Roger D. Blackwell's convictions, *United States v. Blackwell*, 459 F.3d 739, 749-51, 753-54, 755-58, 761-62, 767-70 (6th Cir. 2006) and the September 22, 2009, Report and Recommendation, *in passim.*

Blackwell argues that there is no evidence that the purchases of Worthington Food stock by defendants during the 1999 merger were illegal. Specifically, he argues that there was no evidence that he gave co-defendants Kelley Hughes or her husband Kevin Stacy information about the merger. Viewing the facts as favorable to himself, Blackwell asserts that his attorneys were constitutionally ineffective because they failed to present facts and make arguments to the jury that would have demonstrated his innocence.

The petition advanced 28 grounds for relief:

> 1. Defendant Roger Blackwell was denied effective counsel when his lead counsel, Thomas Gorman, failed to advise defendant that Gorman should be a trial witness, not Blackwell's trial attorney.
>
> 2. Defendant was denied effective assistance of counsel because his lead counsel, Thomas Gorman, lied about his criminal trial experience and had not tried a criminal case in more than 25 years.
>
> 3. Defendant was denied effective assistance when lead counsel Tom Gorman forgot to issue subpoenas to two crucial trial witnesses.
>
> 4. Defendant was denied effective assistance of counsel when lead counsel Thomas Gorman failed to introduce Gertrude Stephan's SEC testimony after it was clear she was an "unavailable" witness.
>
> 5. Defendant was denied effective assistance of counsel when lead counsel Thomas Gorman forced the removal of attorney Terry Grady, the one person on the defense team with recent criminal experience.
>
> 6. Defendant was denied effective assistance of counsel when defense counsel Gorman conducted an incomplete, ineffective, and wholly inadequate cross examination of

defendant's ex spouse, who was the prosecution's star witness.

7.  Defendant was denied effective assistance of counsel when defense counsel's lack of diligence caused his failure to introduce crucial evidence to refute the false testimony of Tina Lundgren (aka Tina Stephan).

8.  Defendant was denied effective assistance of counsel when defense counsel Gorman failed to provide an evidentiary foundation before calling Professor Branson as an expert witness.

9.  Defendant was denied effective assistance of counsel because of the manifest deficient attorney conduct caused by his failure to interview key witnesses whom he called or should have called.

10.  Defendant was denied effective assistance of counsel by the deficient performance of counsel in cross examination when he failed to impeach the prosecutor's witness, Jack Kahl with Kahl's previous inconsistent testimony.

11. Defendant was denied effective assistance of counsel by the failure when defense counsel Gorman failed to introduce evidence and subpoena witnesses showing collaboration between Lundgren and Kahl.

12.  Defendant was denied effective assistance of counsel when defense counsel failed to authorize/and or complete a thorough investigation of the key prosecution witnesses and/or effectively admit such evidence at trial.

13.  Defendant was denied effective counsel because defense counsel Gorman negligently failed to present evidence regarding the Oxford Investment Club as an alternative explanation of how Kelley Hughes could have received information about the Worthington-Kellogg merger.

14.  Defendant was denied effective assistance of counsel when Gorman failed to introduce evidence regarding the ACT! deletions.

15.  Defendant was denied effective assistance of counsel when Gorman failed to proffer evidence that was excluded by the trial judge.

16.  Defendant was denied effective assistance of counsel when defense counsel Gorman failed to object to the abuse of and preserve defendant's 5th Amendment right not to have the jury rely on material developed outside the record and his 6th Amendment right to know the name of and confront adverse witnesses.

17.  Defendant was denied access to effective counsel by the failure of defense counsel to object to improper comments and/or arguments of prosecutor and misconduct by prosecutor.

18.  Defendant was denied effective assistance of counsel by the failure of his defense counsel to involve defendant in a critical stage of the trial process.

19.  Defendant was denied his constitutional rights by the failure of the trial judge to recuse himself.  The trial judge avoided a recusal by a false statement about his relationship with defendant, omission of information concerning prior relation-ships with defendant and his former wife, conduct both im-proper and giving the appearance of impropriety by the judge.

20.  Defendant was denied effective counsel because defense counsel utterly failed to develop or argue a defense theme which would have provided a basis for a finding of reasonable doubt.

21.  Defendant was denied effective assistance of counsel when defense counsel negligently failed to call character witnesses.

22. Defendant was denied effective counsel by Defense Counsel Gorman's failure to introduce crucial evidence at trial.

23. Defendant was denied effective assistance of counsel when defense counsel failed to make proper pretrial motions and to proffer evidence at trial to preserve important issues for appeal.

24. Defendant Roger Blackwell was denied the effective assistance of counsel when lead trial counsel Thomas Gorman placed his financial interests above Blackwell's interests and in so doing failed properly to advise Blackwell.

25. Defendant was denied effective assistance of counsel because counsel's numerous deficiencies amounted to cumulative error, cumulatively prejudicing defendant.

26. The conviction of Defendant Roger Blackwell was obtained by a violation of the privilege against self incrimination.

27. Conviction was obtained by multiple acts of prosecutorial misconduct.

28. Sentencing of defendant's conviction was obtained by a violation of the Constitutional protection against double jeopardy.

Each of these grounds were addressed in some detail by the Magistrate Judge. Although Blackwell maintains his innocence, the jury found him guilty; and, as the Court of Appeals held, there is substantial evidence of his guilt in the record on each count for which he was convicted. Upon a *de novo* review as required by 28 U.S.C. §636(b), the Court concludes for the reasons set out in more detail in the Report and Recommendation that the petition is without merit and must be denied.

The Court will briefly address petitioner's objections. In <u>Ground 1</u> petitioner argues that his defense counsel, Thomas Gorman, should have withdrawn as counsel and testified in his defense that Blackwell's response to the NASD was made on advice of counsel. As the Magistrate Judge found and petitioner does not rebut in his objections, Blackwell has not explained how Gorman's testimony would have aided the defense and has failed to meet his burden that if he had testified the result of the proceedings would likely have been different.

<u>Ground 2</u> argues that petitioner was denied the effective assistance of counsel when Gorman misrepresented his prior criminal trial experience and failed to disclose that he had not tried a criminal case in 25 years. Gorman had considerable experience in securities litigation but no criminal trial experience since working as a public defender from 1973 to 1978. Blackwell was free to chose his attorney. Petitioner has not demonstrated that Gorman's lack of criminal trial experience led to his not functioning as the "counsel" guaranteed by the Sixth Amendment during his criminal trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

<u>Grounds 3 through 17, 22 and 23</u> allege that petitioner was denied the effective assistance of counsel during the course of the trial. These grounds are discussed at pages 20-77 and 85-92 of the Report and Recommendation. Upon *de novo* review, the Court concludes that none of these claims is meritorious. In Ground 3 and 4, petitioner argues that defense counsel should have called Alfred and Gertrude Stephan, the parents of a key government witness, Blackwell's ex-wife Kristina Stephan. But

petitioner offers no credible evidence that they would have given testimony supporting his defense. The argument in Ground 5 that Gorman somehow forced the removal of attorney Grady from the defense team finds no support in the record. Blackwell chose who would defend him at trial.

Grounds 6 and 10 allege that Gorman failed to effectively cross-examine Kristina Stephan and Jack Kahl. For the reasons set out in the Report and Recommendation at pages 26-31 and 55-58, the Court concludes that petitioner has failed to demonstrate that defense counsel made errors so serious in the cross-examination of Stephan and Kahl that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Further, petitioner has failed to demonstrate that the allegedly deficient performance prejudiced his defense. Stephan and Kahl were important prosecution witnesses, and Gorman's cross-examination of them was vigorous. Blackwell's after the fact second guessing of his counsel's strategic choices is not proof of a Sixth Amendment deprivation.

Grounds 7, 8, 9, 11, 12, 13, 14 15 and 21-23 allege failures to introduce evidence, to investigate, to present witnesses, and to interview witnesses. For the reasons set out at pages 31-55, 58-74 and 83-92 of the Report and Recommendation, the Court concludes that these claims are without merit. Petitioner presents no evidence supporting these claims that would, if accepted as true, support his allegation that defense counsel denied him the effective assistance of counsel. These claims assume

Blackwell's innocence and assert, rather than prove, that different actions by defense counsel might have led to acquittal.

Grounds 16 and 17 allege Blackwell was denied the effective assistance of counsel when Gorman failed to object to rulings and to improper comments/argument by the prosecutor. As the Magistrate Judge found, Ground 16, based on "The Juror Lip-Reading Incident," was an assignment of error on direct appeal that was rejected by the Court of Appeals. *United States v. Blackwell,* 459 F.2d at 767-70. There is no support in the record for the claim. Similarly, for the reasons set out at pages 74- 77 of the Report and Recommendation, Ground 17 lacks merit.

Grounds 21 and 22 allege that defense counsel failed to call character witnesses and failed to introduce a number of items of evidence that petitioner believes would have assisted his defense. As the Magistrate Judge stated, the Supreme Court has held that a decision about whether to call character witnesses is virtually unchallengeable. *Strickland, supra*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *see also Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984). Further, favorable character evidence was introduced into evidence at trial. Report and Recommendation, at p. 85. Thus, there is no merit to Ground 21. For the reasons discussed at pages 85-91 of the Report and Recommendation, Ground 22 is without merit.

Ground 23 alleges that defense counsel failed to failed to file a motion to dismiss the charges against him as barred by the statute of limitations. For the reasons stated in the Report and Recommendation at pages 91-92, this claim is plainly without merit.

Grounds 18 and 19 allege that Blackwell was not present at a pretrial conference during which the Court denied him a fair trial by refusing to recuse himself. As the Magistrate Judge found, the pretrial conference referred was not a critical phase of the trial proceedings at which the constitution mandated that petitioner be present. *See e.g., United States v. Burke*, 345 F.3d 415, 425-26 (6th Cir. 2003)*; United States v. Brown*, 571 F.3d 980, 986 (6th Cir. 1978); *United States v. Davis*, 809 F.2d 1194, 1200-1201 (6th Cir. 1987). Further, petitioner has failed to demonstrate any ground for the Court to recuse itself. See, April 9, 2008 Opinion and Order (Doc. 296). Petitioner offers no new evidence that would warrant a contrary conclusion.

Ground 20 alleges that defense counsel failed to develop and argue a defense theme that would have supported a finding of reasonable doubt. As the Magistrate Judge found, Report and Recommendation at page 83, there is no merit to this claim.

Ground 24 alleges that petitioner was denied the effective assistance of counsel when Gorman placed his financial interest in attorney fees above Blackwell's interests. The September 22, 2009 Report and Recommendation addressed this claim as follows:

> Blackwell states that Gorman and his firm billed him more than six million dollars for legal services in this case and his attorney placed his own financial interests above those of petitioner's defense. Blackwell complains that Gorman and his firm threatened to withdraw on the eve of trial unless he posted millions of dollars in collateral, including his home.

Additionally, Blackwell asserts that defense counsel failed to advise him that he should consider settling his case with the SEC which might have caused the government to refrain from pursuing criminal charges against him. Blackwell states that

> after Blackwell's conviction, the government's chief trial counsel, Michael Marous, stated on at least two occasions that Blackwell would not have been prosecuted if he had settled with the SEC.

*Petition*, at 54. Blackwell thus alleges that his attorney labored under a conflict, placing his pecuniary interest above his client's best interests in defending the charges against him.

> A conflict of interest arises "when the defense attorney . . . [is] required to make a choice advancing his own interests to the detriment of his client's interests." *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir.1988). The classic conflict of interest situation arises when a lawyer represents two or more co-defendants . . . or two clients with opposing interests. A conflict may also arise when a client's interests are adverse to his lawyer's pecuniary interests. *See Winkler v. Keane*, 7 F.3d 304, 308 (2d Cir.1993) (contingent fee in criminal case created actual conflict of interest), cert. denied, 511 U.S. 1022, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994); *United States v. Marrera*, 768 F.2d 201, 207 (7th Cir.1985) (attorney's interest in movie rights to client's story created potential conflict of interest), cert. denied, 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 321 (1986); *United States v. Marquez,* 909 F.2d 738, 741 (2d Cir.1990) (noting that prosecutor's attempt to use release of confiscated funds, which would be used to pay defense attorney, as bargaining chip in criminal case could create a conflict of interest), cert. denied, 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991); *Motta v. District Director, Immigration and Naturalization Service*, 869 F.Supp. 80, 89 (D.Mass.1994) (attorney's dissatisfaction with fee arrangement not legitimate excuse for filing untimely appeal); *but see United States v. Wright*, 845 F.Supp. 1041, 1073 (D.N.J.1994) (nonpayment of legal fees "does not establish a conflict of interest of the type which would establish ineffective assistance; lawyers are required to provide zealous advocacy regardless of a criminal defendant's failure to pay legal fees"), aff'd, 46 F.3d 1120 (3d Cir.1994) (table).

*Daniels v. United States*, 54 F.3d 290, 294 (7th Cir. 1995). Under *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980), where the trial judge is not notified of the

alleged conflict, in order to establish a violation of the Sixth Amendment, the defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (footnote omitted). . . .

Blackwell has not referred to, and the Magistrate Judge is unable to locate in the record, any indication of the alleged conflict of interest based on any issue regarding Blackwell's payment of legal fees, or counsel's pecuniary interests. Further,

> "[C]ourts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client." *United States v. Taylor*, 139 F.3d 924, 932 (D.C.Cir.1998); cf. *United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir.1997) ("[W]e presume that counsel will continue to execute his professional and ethical duty to zealously represent his client, notwithstanding [a] fee dispute."), *cert. denied sub nom. Saia v. United States,* 522 U.S. 1064, 118 S.Ct. 728, 139 L.Ed.2d 666 (U.S. Jan. 12, 1998); *United States v. Wright*, 845 F.Supp. 1041, 1073 n. 35 (D.N.J.) ("[N]onpayment of legal fees . . . does not establish a conflict of interest of the type which would establish ineffective assistance; lawyers are required to provide zealous advocacy regardless of a criminal defendant's failure to pay legal fees."), aff'd, 46 F.3d 1120 (3d Cir.1994) (table). Consequently, to the extent that pecuniary interests lead an attorney to shirk his or her ethical obligation to provide dutiful representation, the client's Sixth Amendment claim is evaluated according to the stricter standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). O'Neil, 118 F.3d at 72; *see Taylor*, 139 F.3d at 932; see also *Bonin v. Calderon*, 59 F.3d 815, 827 (9th Cir.1995) (holding that lawyer's pecuniary interests may "create a theoretical conflict of interest, [but] do not typically create actual conflicts under *Cuyler* "), *cert. denied,* 516 U.S. 1051, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996); *cf. Beets v. Scott*, 65 F.3d 1258, 1271 (5th Cir.1995) ("*Strickland* best addresses attorney self-interest conflicts."), *cert. denied*, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996). . . .

*United States v. Martinson*, No. Civ. 97-3030, Cr. 92-00228-01, 1998 WL 111801, at *2-4 (E.D. Pa. Mar 4, 1998) (finding that petitioner was not entitled to evidentiary hearing on his Sixth Amendment conflict of interest claim where he "submitted no evidence that his attorneys sabotaged his plea bargain in order to collect legal fees" and "not one shred of evidence that his attorneys would have taken this case to trial, but for the conflict").

> *United States v. Zhadanov,* 1998 WL 633698 (E.D. Pa. August 11, 1998); *see also Familia-Consoro v. United States*, 160 F.3d 761, 766 (1st Cir. 1998) (citations omitted). In short, Blackwell's summary allegation that his attorneys placed their financial interests above his in obtaining the best defense possible is without record support. The record fails to establish that petitioner was prejudiced, based on any fee issues with counsel, as that term is defined under *Strickland, supra,* 466 U.S. at 694.

Report and Recommendation, pages 92-95. The Court agrees that Blackwell's speculation that defense counsel's pre-prosecution representation before the NASD/SEC was motivated by a desire to reap attorney fees from a criminal prosecution, thus depriving him of the effective assistance of counsel at trial, fails for lack of supporting evidence.

<u>Ground 25</u> argues that counsel's cumulative errors denied petitioner the effective assistance of counsel. Since none of petitioner's individual ineffective assistance of counsel claims have merit, neither does this claim. Viewed as a whole, counsel's representation did not fall below that constitutionally mandated.

<u>Ground 26</u> alleges that the prosecution's use of Blackwell's response letter to the NASD's inquiry somehow violated his privilege against self-incrimination. As found by the Magistrate Judge, Report and Recommendation at pages 96-99, the claim is barred from review here because it could have been raised on direct appeal and, in any event, the letter is not privileged.

<u>Grounds 27 and 28</u> allege multiple acts of prosecutorial misconduct, all of which could have been raised on direct appeal and are not reviewable here, and that petitioner's conviction subjected him to double jeopardy. Both claims are without merit.

Petitioner has failed to offer evidence demonstrating prosecutorial misconduct that denied him a fair trial. He was not twice placed in jeopardy of criminal conviction.

For the reasons set out above and those detailed in the Magistrate Judge's Report and Recommendation, this Court is unpersuaded by petitioner's arguments. Petitioner's objections (doc. 338) therefore are **OVERRULED**. The Report and Recommendation (doc. 337) is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED.**

**IT IS SO ORDERED**.

S/ James L. Graham
JAMES L. GRAHAM
United States District Judge

Date: Apr. 5, 2010